In the Matter of the Application of HUGH GALLAHER, etc., Petitioner, for a Peremptory Mandamus Order against THE AMERICAN LEGION and Another, Defendants.*

Supreme Court, New York County, March 29, 1934.

* Affd., 242 App. Div. 604; leave to appeal to Court of Appeals denied, Id. 630; Court of Appeals likewise denied such leave, N. Y. L. J. Oct. 10, 1934.

*Ernest Angell, Parker McCollester* and *Harris Berlack,* for the petitioner.

*Baar, Bennett & Fullen* and *Edward J. Neary,* for the defendants.

COHN, J. In support of this application to compel reinstatement into the American Legion of the Willard Straight Post and its members, the petitioner urges (1) that the charter of the Willard Straight Post was revoked without notice of a hearing and without affording the officials of the aggrieved post an opportunity to be heard, and (2) that the rule or regulation of the American Legion, for violation of which the post lost its charter, was unreasonable and unlawful.

A preliminary question is raised by the defendants as to the jurisdiction of this court to exercise visitorial powers over the American Legion. The principal place of business of the legion, it is argued, is in the State of Indiana. However, the legion is not regarded as a citizen of any one State. It was incorporated under the laws of the United States by act of Congress (U. S. Code, tit. 36, §§ 41–51), not under State laws, and its activities and powers were not to be confined to a single State, but to be carried on, in fact as they are, in different States. (*Bankers Trust Co.* v. *Texas & Pacific R. Co.,* 241 U. S. 295, 309.) As a condition precedent to the exercise of any powers or privileges granted or conferred the legion was required to file in the office of the Secretary of State of each State the name and post-office address of an authorized agent upon whom legal process or demands against the legion might be served. (U. S. Code, tit. 36, § 50.) This provision was duly complied with in New York State. Thereafter, pursuant to powers granted the legion by the legislative mandate creating it, " to establish State and Territorial organizations and local chapter or post organizations " (U. S. Code, tit. 36, § 44), numerous posts, including the Willard Straight, were established and have been functioning here. The legion in this manner " did business " within this State and subjected itself to the jurisdiction of the New York courts. Any question as to membership therein may, therefore, be controlled by mandamus order. (*Matter of Wilcox,* 123 App. Div. 86; *Morgan* v. *Mutual Benefit Life Ins. Co.,* 189 N. Y. 447; *People ex rel. Solomon* v. *Brotherhood of Painters,* 218 id. 115, 119.)

Examining now the first of the two grounds upon which is based the petition for peremptory mandamus order, the correspondence between the officers of the expelled post and the heads of the State

and National body of the legion (See Exhibits 2 to 31, attached to the moving papers), establishes that the officers of the Willard Straight Post were never, either before or after revocation of its charter, apprised of the particular charge or charges against it, although there were repeated demands for a specification of them. Other than formal notice of suspension, the only record of action ever received by the banished group was a copy of the resolution adopted by the New York State Department sent to the petitioner on March 21, 1933 (Exhibit 18). The constitution and by-laws of the defendant legion make no provision for notice of hearing of charges before revocation of the charter of a post, although such notice is provided for in the case of revocation of the charter of a State department. (American Legion Const. art. XI, § 1.) However, even in the absence of such provision under settled principles of law, before expulsion of a member or of a post is attempted, notice of the charges and a reasonable opportunity to be heard is always required, in fairness to the accused. (*People ex rel. Holmstrom* v. *Independent Dock Builders' Union*, 164 App. Div. 267; *Williamson* v. *Randolph*, 48 Misc. 96; *Fritz* v. *Muck*, 62 How. Pr. 69.)

Moreover, the Willard Straight Post was not accorded the right of appeal in accordance with the legion's by-laws. The provisions regulating appeal state: " American Legion posts suffering the revocation of their charters may appeal from the decision of the Department Commander and the Department Executive Committee to the National Executive Committee as hereinafter prescribed." (American Legion By-Laws, art. III, § 3.)

" Upon notice of appeal the National Commander shall appoint a sub-committee of not more than five nor less than three members of the National Executive Committee for the purpose of passing upon the action of the Department Executive Committee in revocation of said charter. This Committee shall meet at least one day prior to the meeting of the National Executive Committee next following such revocation and to this committee shall be referred *the complete record in writing of said revocation, with such exceptions thereto as are made by the Post of which the charter has been revoked.*" (American Legion By-Laws, art. III, § 4.) (Italics mine.)

Before the appeal taken by the Willard Straight Post had been heard, persistent efforts were made by officials of the post to secure from the State department and from the National executive committee a transcript, as the by-laws require, of " the complete record in writing of said revocation." All such efforts were futile; the post could not at any time obtain the record in the case. How, in reason and equity, could its officials be required to proceed

with an appeal without any record upon which to base objections and exceptions? Thus the ousted post was not only denied a fair hearing on the original charges, but it was also deprived of the right of appeal in accordance with the by-laws of the American Legion. Under such circumstances revocation of the charter of the Willard Straight Post was improper and illegal.

As to the second ground asserted as a basis for the relief sought, the court is of the view that the regulation complained of was unreasonable and unlawful. It reads as follows:

" Where the National Organization has taken a position *on any subject* under mandate of the National Convention, no Post or County Organization may adopt a resolution in conflict with that position. A Post or County Organization, however, may adopt resolutions protesting against the action taken at the National Convention and petitioning that such action be amended or rescinded. Such resolution of protest, however, *must not be given to the public press nor be forwarded to any public officials* but must be submitted to the National Organization through channels." (Italics mine.)

In December, 1932, the officers of the Willard Straight Post, it is charged, disregarded this resolution by transmitting to the public press a statement of the post's action in adopting a resolution which opposed the present payment of the soldiers' bonus. The gravamen of the offense was that after the National body had taken a position on this subject, the post made public a contrary stand. The American Legion's regulation, even if properly adopted and imposed, is an unreasonable one and its enforcement by causing expulsion of a post for disobedience transcends the powers granted to the legion by the act of Congress incorporating it.

The legion is a patriotic and honorable fellowship, limited to veterans of the World war, and created by Congress " to cement the ties of love and comradeship born of service; and to consecrate the efforts of its members to mutual helpfulness and service to their country." It was also designed " to promote peace and good will among the peoples of the United States and all the nations of the earth; to preserve the memories and incidents of the Great War of 1917–1918." (U. S. Code, tit. 36, § 43.) In character, the legion is non-political. (U. S. Code, tit. 36, § 46). Nor is it a *secret* organization. (U. S. Code, tit. 36, § 49.) The quoted regulation for violation of which the petitioner's post has been expelled is not only an unwarranted assumption of authority by the National body, but by its language the mandate is opposed to the spirit if not the very letter of our State Constitution and our Federal Constitution. (N. Y. State Const. art. 1, §§ 8 and 9;

U. S. Const. First Amendt.) These give to all citizens the right freely to publish their sentiments on all subjects. This rule of the legion unreasonably inhibits this fundamental right. To subject a subordinate group of the legion, consisting of sixty-seven members, to the disgrace of banishment because its officers failed to comply with a regulation such as this, designed to suppress public expression of an independent view by a subdivision of the National body, on a matter which is wholly outside the scope of the granted powers of the American Legion as defined by its charter, is contrary to law, unsound in principle, and out of harmony with the noble ideals for which this fine organization was founded. By-laws and regulations of associations must be reasonable and not contrary to law or to public policy. (*People ex rel. Gray* v. *Medical Society*, 24 Barb. 570; *Stein* v. *Marks*, 44 Misc. 140; *People ex rel. Schmitt* v. *St. Franciscus Ben. Soc.*, 24 How. Pr. 216; *Spayd* v. *Ringing Rock Lodge*, 270 Penn. St. 67; 113 A. 70.)

While courts are reluctant to interfere with the internal government of associations of the character of the American Legion, where there is no other adequate remedy to an aggrieved party to enforce a clear legal right, mandamus will lie. On the undisputed facts I find that the charter of the Willard Straight Post was unlawfully revoked. The motion for a peremptory order of mandamus is accordingly granted. Settle order.