[Civ. No. 4505.   Fourth Dist.   July 9, 1953.]

WILLIAM A. KEELER, Respondent, v. RUTH SCHULTE
et al., Appellants.

Rinehart, Merriam, Parker & Berg for Appellants.

Johnson & Johnson for Respondent.

GRIFFIN, J.—Defendants prosecuting this appeal are (1) James A. Long, the present leader of The Theosophical Society, an unincorporated organization; (2) Ruth Schulte, Constance Hostler, Earl Hostler and Ross Simpson, who were and are four of seven members of the board of trustees of San Diego Lodge No. 1, American Section of The Theosophical Society, at Covina, California; (3) The Theosophical Endowment Corporation, a nonprofit California corporation; and (4) Kirby Van Mater. The nonappealing defendant is the Hebrew Home For the Aged Association, a corporation, alleged purchaser of the real property here involved.

Plaintiff, treasurer of and in a claimed representative capacity for the members of San Diego Lodge No. 1, American Section of The Theosophical Society, a California corporation, brought this action to set aside a deed of the lodge property and to restrain the attempted dissolution of the lodge. The lodge was originally incorporated about 1932, in the name of Katherine Tingley Lodge No. 1, and about 1945, it changed its name to the name indicated. At the time of the grievances here complained of it had 88 active members. It owned real and personal property valued at approximately $30,000. It adopted its own by-laws which provided generally that the lodge "recognizes the authority of the Constitution of the Theosophical Society (Covina)," "and shall conform with the By Laws of the American Section." They also provided for a board of directors consisting of seven members; that a

quorum shall be composed of 20 members of the lodge and that ''A special meeting of members may be called at any time by request of President, by a majority of members of Board of Trustees, or by 10 per cent of members collectively, upon three days' written notice, and such notice specifying the proposed purpose of the meeting.'' Article IV, section 2 thereof, provides that ''The Board of Trustees shall be the legislative body of the Lodge and shall execute all corporate powers and the business affairs of the organization,'' and that ''A majority vote shall be necessary for decision at such meetings.'' Article X, section 1, provides that ''The property of San Diego Lodge No. 1 shall be in the hands of the Board of Trustees, who shall have supreme power in this respect and in all legal matters pertaining to the welfare of the lodge''; that the property ''now in its possession, of any kind whatsoever, whether real or otherwise, shall remain as such while working under the present Charter,'' and that ''No member of this Lodge shall have any individual right or title to such property.'' Section 3 then provides that ''Should this Lodge at any time be disbanded, or should its Charter be revoked, or should it by any other means go out of existence, its entire property, real, personal and mixed, shall become the property of Theosophical Endowment Corporation.'' The constitution of The Theosophical Society, adopted in 1929, provides generally that applications for lodge charters shall be made to it and such lodge charters shall not be effective until signed by the leader; that when such an organization adopts ''this constitution'' it shall become an integral part of ''The Theosophical Society.'' By it, the leader is given the power to declare the policy and in general to direct the affairs of the society.

It appears from the evidence that one Colonel Conger was, on February 6, 1951, leader of The Theosophical Society. He reputedly died about February 20, 1951. He had been physically handicapped and had been suffering for some time from such condition. About February 6, 1951, two claimed emissaries of his arrived in San Diego about 2 o'clock in the afternoon, called the president and secretary of the lodge on the phone, and informed them that a meeting of the lodge must be held that night at 8 o'clock. About 19 members were thereafter called on the phone about the special meeting. Shortly before 8 o'clock the two emissaries met with the trustees present and delivered a purported oral message from the leader and informed those present that two forces had

been causing trouble in the church and that the leader wanted the lodge dissolved; that the idea was to sell their present building, "get rid of everything . . . and the old scandals," and that this "came as a specific, urgent inquiry of the soul."

Thereafter, at 8 p.m., another meeting, denominated in the minutes a "Special Meeting," was called before the members present. Others attended this meeting who were not members. They were told this same purported message by the emissaries, and that they wanted the business completed that night. It was then moved that the leader's order be carried out and that a vote of confidence follow. It carried by a rising vote and the meeting adjourned. The charter, minutes, etc., were delivered over to the emissaries. The business books and accounts were retained by plaintiff. Thereafter, the trustees authorized the sale of the real property, furniture, etc. A grant deed of the real property to the defendant Hebrew Home For the Aged Association was executed by the "Theosophical Endowment Corporation," which is a subordinate organization of The Theosophical Society, and the one named in the by-laws as the one entitled to all the lodge's property in the event of surrender of the charter. The consideration was $17,000. An escrow was opened but there was no deed executed by the lodge to the Theosophical Endowment Corporation. The escrow has not been closed.

It is appellants' contention that title thereto passed, *ipso facto,* under the provisions of the by-laws on the surrender of the charter. Plaintiff's contention is that only 19 members were present and the remainder of the members apparently had no knowledge of the meeting or the purpose for which it was held, and had no opportunity to defend against the accusations of slander and gossip or to participate in the vote; that no notice of a special meeting was given, as required by the corporation's by-laws; that no delegation of power to dissolve the lodge or surrender its charter and dispose of practically all of its assets is contained in the by-laws without proper notice, and that if such by-laws gave such power it was unreasonable, contrary to public policy, not in harmony with the objects of society, and in violation of sections 9800 and 3901 of the Corporations Code, which provide that a corporation may not sell all or substantially all of its assets except under authority of its board of trustees and with the vote or written consent of shareholders. In support of these propositions they cite such cases as *Knights of Ku Klux Klan, Inc.* v. *Francis,* 79 Cal.App. 383, 385 [249 P. 539];

*Grand Grove, etc., Druids* v. *Garibaldi Grove, etc., Druids,*
130 Cal. 116, 120 [62 P. 486, 80 Am.St.Rep. 80] ; and *Supreme Lodge of the World* v. *Los Angeles Lodge No. 386,*
177 Cal. 132, 136 [169 P. 1040].

The trial court, in the first instance, signed detailed findings to the effect that although the members of the lodge took no formal action in reference to the sale of the property, under the by-laws the trustees alone had such power, and that its charter had been revoked and surrendered, and concluded that plaintiff, in a representative capacity for such members, was not entitled to any relief. It ordered plaintiff, as treasurer, to pay over to the Theosophical Endowment Corporation $2,377.90 cash remaining in the treasurer's hands. Judgment was entered accordingly.

The court granted plaintiff's motion for new trial on the grounds of insufficiency of the evidence and for the reason that the decision was contrary to the law.

It is appellants' position that the primary plan of plaintiff was to try the title to the office of leader, and accordingly the court had no jurisdiction so to do, citing *Rosicrucian Fellowship* v. *Rosicrucian Fellowship Non-Sectarian Church,*
39 Cal.2d 121 [245 P.2d 481]. It is also claimed that the charter of the lodge was voluntarily surrendered by the action of the trustees and that they had plenary authority thus to do ; that such surrender only involved a matter of internal policy and administration of The Theosophical Society ; that since the evidence would not justify a finding in favor of plaintiff under the evidence, and since there is no conflict in it, the court was not authorized to grant a new trial, citing such cases as *Henningsen* v. *Howard,* 117 Cal.App.2d 352 [255 P.2d 837] ; *Norden* v. *Hartman,* 111 Cal.App.2d 751 [245 P.2d 3, .6] ; and section 9802, Corporations Code.

While there was some intimation in the testimony that appellant, James A. Long, was not a duly appointed leader of the society at that time, that is not the issue here presented nor is it the determining factor. It appears from the evidence that the lodge owned, in its own name, and enjoyed real property, cash, furnishings, records, and a charter of a value far in excess of that for which it was attempted to be sold. A property right is involved in this action. ■ It is fundamental that under the provisions of the Constitution of the United States (Amendment No. 14) no one shall be deprived of property "without due process of law." This provision has been held applicable to the

property of a lodge ordered forfeited in the event of a suspension, revocation, or surrender of a charter. (*Supreme Lodge of the World* v. *Los Angeles Lodge No. 386, supra*; *Ellis* v. *American Federation of Labor*, 48 Cal.App.2d 440 [120 P.2d 79] ; *Gallaher* v. *American Legion*, 154 Misc. 281 [277 N.Y.S. 81].)

In *Rosicrucian Fellowship* v. *Rosicrucian Fellowship Non-Sectarian Church, supra*, it is said (quoting from the syllabus) :

''In a controversy between religious societies as to use of property and exercise of other rights, it is necessary to ascertain from the acts, dealings and usages of the parties where the various rights rest to determine the ownership of civil and property rights, even though some so-called ecclesiastical functions are so interwoven with civil and property rights that any decision involving the latter must necessarily affect the former . . .

''In an action in the nature of an equitable proceeding, the court may consider the facts as they existed at the time of trial so that the interests of justice may be subserved.''

Sufficient facts are shown to make this a proper representatitve suit. (*Rosicrucian Fellowship* v. *Rosicrucian Fellowship Non-Sectarian Church, supra*.) A sufficient property interest is involved which would entitle the courts to assume jurisdiction. (*Providence Baptist Church of San Francisco* v. *Superior Court*, 40 Cal.2d 55 [251 P.2d 10].)

The granting of a new trial on the grounds of insufficiency of the evidence rests within the broad discretion vested in the court and no abuse of the discretion here appears. (*Grover* v. *Sharp & Fellows Contr. Co.*, 66 Cal.App.2d 736, 737 [153 P.2d 83].)

Order affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 4, 1953.