## Augustus F. Mugge, Appellee, v. John Erkman et al., Appellants.

1. MEASURE OF DAMAGES—*in action for improperly overflowing lands.* The true measure of damages in such an action is the fair cash rental value of the land.

2. MEASURE OF DAMAGES—*when loss of probable profits may be shown.* , Loss of the probable profits of a business is not usually the subject of recovery in an action for damages; yet, where the business is of long standing and such profits are capable of definite proof and are within the contemplation of the parties, past profits for a considerable period may be taken into consideration in some cases by the jury in fixing the damages, and in such cases it is up to the defendant to show that there are other reasons why the profits or damages should be less.

3. EVIDENCE—*what competent to ascertain fair cash value of land.* In an action for improperly overflowing lands, where it is proven on the trial that land in the vicinity in question is not customarily rented for cash but for one-third of the matured crop delivered, it is proper to prove the character of the crops previously raised and how much per acre or how much and what crops it would have produced in ordinary seasons under ordinary circumstances, as tending to show the productiveness of the soil and as tending to prove the value of the land. The supposed value of what might have been raised on the land in the year in question had it been cultivated, less the cost of cultivation and marketing, however, is too remote and speculative.

4. APPEALS AND ERRORS—*when admission of improper evidence will not reverse.* Where a case is tried before the court without a jury the admission of improper evidence will not reverse if there appears sufficient proper evidence in the record to sustain the judgment, as the law presumes the trial judge only considered proper evidence.

5. WATERCOURSES—*liability for overflowing lands.* The doctrine that the owner of land has a right to drain the same by ditches on such land, discharging the waters thereof into a natural watercourse, is limited by the further doctrine that the natural flow of waters, whether surface or other waters, cannot be diverted from their natural course so as to do injury to another by causing more waters to flow on his land than otherwise would in a state of nature.

Action in case. Appeal from the Circuit Court of Saline county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed April 15, 1911.

**Statement by the Court.**    August F. Mugge was the owner of the northeast fourth of the southeast quarter of section 17; and William Randolph owned the southeast quarter thereof, while John Erkman owned the forty acres south of and adjoining Randolph's southwest forty, all in Township 9 South and in Range 7 East of the 3rd P. M., in Saline county.    Mugge, appellee, charged in his declaration that in 1908 a portion of his land was overflowed and damaged on account of the wrongful and negligent construction of a certain ditch and embankment by Erkman and Randolph.    The defendants filed a plea of not guilty; and, on a trial before the court without a jury, judgment was rendered against defendants and in favor of the plaintiff for eighty dollars damages.

JAMES R. WILLIAMS, NOAH C. BAINUM and WINFIELD F. SCOTT, for appellant.

WHITLEY & SOMERS, for appellee; CHOISSER, CHOISSER & KANE, of counsel.

MR. JUSTICE DUNCAN delivered the opinion of the court.

The evidence shows that Randolph and Erkman constructed a ditch beginning near Erkman's south line and a little west of his east line, running thence north to the south line of Randolph's northwest forty, thence west to a point near the center of the south line of said forty, thence in a northwesterly direction to a point on the line between Randolph and Mugge and near the southeast corner of Mugge's north twenty, and thence north on Randolph's land to his northwest corner.    The embankment was thrown up on the east side of the ditch.    The evidence of a number of appellee's witnesses tended to prove that this ditch and embankment caused water that fell on Erkman's forty and Randolph's south eighty and other lands, to be discharged on Mugge's land that otherwise

would not and could not have reached his said land; and that this increased water shed amounted to sixty acres or more, and that thereby his land was overflowed and damaged so that he could raise no crops on some ten or twelve acres of it in 1908. This evidence was contradicted by a number of witnesses for appellants; but the court has evidently decided this question in favor of the plaintiff, and the preponderance of the evidence seems to support the plaintiff in his contention. The evidence is too voluminous for discussion in detail; and as much the greater number of witnesses support the plaintiff's contention, we do not feel warranted in disturbing the finding of the court whose province it was to determine upon which side was the greater weight of the evidence. There are two other facts proven in the case that tend to corroborate this claim of the plaintiff. The first is that the ditch was terminated at or near Randolph's northwest corner without sufficient outlet, thereby causing the waters to be discharged at that corner and on to the east part of Mugge's north twenty. It was proved that there were overflows there on the west side of this ditch onto Mugge's land caused by the ditch and embankment on the east side thereof which tended to hold the water and force it west. In the second place it is shown by all the evidence, practically, that the east part of Mugge's north twenty was higher ground than the west part of Randolph's north twenty, and that the declivity of the land there for some distance was east and extended some three or four hundred feet in to Randolph's northwest forty. It appears from the evidence that the lowest point or waterway there extended from near the center of the south line of this forty and through the same to a point about four hundred feet east of the northwest corner thereof and thence north or northwest. Randolph's south eighty and Erkman's forty were very much higher lands than Mugge's or Randolph's northwest forty. In view of this evidence we cannot do otherwise than sustain the court in his find-

ings that the plaintiff was damaged as claimed by him.

The court held that the true measure of damages is the fair cash rental value as contended by appellants; but it is insisted by appellants that the court admitted and considered improper evidence in arriving at the damages, that is, the supposed value of what might have been raised on the land in 1908 had it been cultivated. It was proven on the trial that land in that vicinity was not customarily rented for cash, but for a third of the matured crop delivered, that is, the landlord got a third of the crop gathered and delivered to him by the tenant. The witnesses for this reason were not able to state what the cash rental value of said land was. As bearing on the question of the rental value of the land the court permitted the witnesses to tell the character of the crops that had been raised on the farm, how much corn it would ordinarily produce per acre, and the character of the soil generally as to fertility and productiveness. It was proven to be strong, fertile bottom lands, and capable of producing crops of any character raised in that vicinity, and that it had produced good crops for some eighteen or twenty years prior to 1908. We think that it was proper to prove the character of the crops previously raised, and how much per acre, or how much and what crops it would produce in ordinary seasons under ordinary circumstances, as tending to show the productiveness of the soil and as tending to prove the value of the land. The true measure of damages for improperly overflowing the lands is its fair cash rental value. City of Chicago v. Huenerbein, 85 Ill. 594; K. & S. Ry. Co. v. Horan, 17 Ill. App. 650. The supposed value of what might have been raised on the land in 1908 had it been cultivated, less the cost of cultivation and marketing, would be too remote and speculative as a measure of damages, as held in the above cases. This holding is not equivalent to holding that it is improper to prove what crops had been raised and in what quantities, or what crops

and in what quantities could be raised on it in ordinary years, which is evidence of the character and productiveness of the soil. The rental value of the land for 1908, or the damages that plaintiff was entitled to recover, necessarily depended upon all the evidence before the court; and while we do not intend to be understood as holding that the damages of the plaintiff would be the value of any crop of an ordinary year, or a one-third thereof, yet we do hold that such evidence was proper under the circumstances in this case. Loss of the probable profits of a business is not usually the subject of recovery in an action for damages; yet where the business is of long standing and such profits are capable of definite proof and are within the contemplation of the parties, past profits for a considerable period may be taken into consideration in some cases by the jury in fixing the damages, and in such cases it is up to the defendant to show that there are other reasons why the profits or damages should be less. Chapman v. Kirby, 49 Ill. 211; C. C. C. & St. L. Ry. Co. v. Wood, 189 Ill. 352. For like reasons it was proper for plaintiff to show what his land had produced, and what it would ordinarily produce in the way of crops, as tending to prove its value and productiveness. As the court made a proper holding as to what the real measure of damages should be, we must hold that only proper elements of damages were considered, and the fact that some of the evidence admitted was improper does not require us to hold otherwise. It must be presumed in such cases that the court only considered proper evidence, if the evidence sustains the judgment.

It is next insisted by appellants that they had a right to drain the lands as they did because the ditches were on their own lands and discharged the waters into a natural watercourse. This doctrine must be further limited to the effect that the natural flow of waters, whether surface waters or other waters, cannot be diverted from their natural courses so as to do injury

to another by causing more waters to flow on his lands than otherwise would in a state of nature. Bradbury v. The Vandalia L. and D. D., 236 Ill. 36; Comerford v. Morrison, 145 Ill. App. 615. The evidence tended to show that waters were conducted to this land out of their proper channel that would not otherwise have reached appellee's lands, and that the levee prevented the waters from flowing off appellee's lands east to the natural watercourse, and held them back on his lands. It was for the court to determine the questions, as to whether or not the plaintiff was damaged as alleged by him, and how much he was thereby damaged, and as the evidence supports the judgment and the record does not contain any reversible errors, the judgment of the lower court is affirmed.

*Affirmed.*