[No. C003665. Third Dist. Sept. 19, 1990.]

ST. SAVA MISSION CORPORATION, Plaintiff and Appellant, v. SERBIAN EASTERN ORTHODOX DIOCESE FOR THE UNITED STATES OF AMERICA AND CANADA et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*\* See footnote 1 *post,* page 1363.

## COUNSEL

Fitzgerald, Abbott & Beardsley, Richard T. White and Michael P. Walsh for Plaintiff and Appellant.

McDonough, Holland & Allen, Michael T. Fogarty, Jenner & Block, Albert E. Jenner, Jr., Robert L. Graham, Katz, Karacic & Helmin, and Thomas J. Karacic for Defendants and Respondents.

## OPINION

SIMS, J.—In this case, we consider a dispute that has its origins in a schism in the Serbian Eastern Orthodox Church in America—a schism that

made its way to the Supreme Court of the United States. (See *Serbian Orthodox Diocese v. Milivojevich* (1976) 426 U.S. 696 [49 L.Ed.2d 151, 96 S.Ct. 2372].)

At all relevant times St. Sava Mission Corporation (St. Sava), plaintiff below, has been the record owner of 173 acres of property located in Jackson, California (the Jackson property). Defendant Serbian Eastern Orthodox Diocese for the United States of America and Canada (Diocese) contends it is the beneficial owner of the property and St. Sava holds title in trust for the Diocese. St. Sava disputes this claim and contends it owns the property independent of the Diocese.

The trial court granted summary judgment in favor of the Diocese. The trial court ruled an earlier judgment of an Illinois state court had concluded St. Sava held title to the Jackson property in trust for the Diocese. The trial court reasoned that, even though St. Sava was never a party to the Illinois proceedings, the Illinois judgment was entitled to full faith and credit in California and principles of res judicata barred St. Sava's claims. St. Sava appealed.

We conclude that, under Illinois law, the Illinois judgment cannot bind St. Sava unless it is shown St. Sava's interest was actually and efficiently represented by a party to the proceedings. We further conclude the record reflects a factual dispute with respect to whether St. Sava's interest was so represented. Because the record tenders a factual dispute respecting the validity of the Illinois judgment (and consequently whether it is entitled to full faith and credit in California), we will reverse the summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The current litigation is only the latest action in a string of court battles dating back to the early 1960's, stemming from an internecine dispute within the Serbian Eastern Orthodox Church in America. In order to clarify the setting of the current lawsuit we first recount as briefly as possible the essential facts of the prior litigation.

### 1. *The Illinois Litigation*

The Serbian Eastern Orthodox Church (Mother Church) is a worldwide church organized on hierarchical principles, whose Patriarchal See is located in Belgrade, Yugoslavia. Its ruling body is known as the Holy Assembly of Bishops.

From the time the Mother Church established itself in America until 1963, its supreme religious and administrative body in this country was the Diocese. The religious and administrative head of the Diocese from 1939 to 1963 was Bishop Dionisije Milivojevich (Dionisije). In his capacity as Bishop, Dionisije administered all properties belonging to the Diocese and served as chief executive officer of its corporations.

Dionisije's predecessor as head of the Diocese organized an Illinois religious corporation bearing the same name as the Diocese, pursuant to the Illinois Religious Corporation Act (Ill. Rev. Stat. ch. 32, para. 164 et seq. (1990)), for the purpose of holding title to certain diocesan property located in Illinois. Thereafter an Illinois not-for-profit corporation was formed, also under the Illinois Religious Corporation Act, and title to the Illinois property was transferred to that corporation. The Diocese later formed similar secular corporations to hold title to properties in other states. St. Sava, like the Illinois not-for-profit corporation, received its title by transfer from the Illinois religious corporation. The parties to this litigation dispute whether St. Sava was formed and later existed to hold title to diocesan property in trust for the Diocese.

In 1963 the Holy Assembly of Bishops suspended Dionisije from office and reorganized the Diocese into three new dioceses. Subsequently it defrocked him, removed him from office, and appointed new bishops to succeed him.

Also in 1963, Dionisije caused a lawsuit to be filed in Illinois state court in the name of the two Illinois corporations against his appointed successor, Bishop Firmilian Ocokoljich (Firmilian), contending the actions of the Holy Assembly violated the constitution and laws of the Mother Church. The suit sought a declaration that Dionisije remained the rightful bishop of the Diocese and an injunction against any interference with his control of diocesan property.

The Diocese and Firmilian also filed a lawsuit against Dionisije, the two Illinois corporations, and numerous clerical and lay supporters of Dionisije. The relief sought in the suit included control of all diocesan property. The two rival lawsuits were consolidated.

St. Sava was not named as a party nor served with process in the Illinois litigation, nor did it make an appearance. Various members of St. Sava's board of directors—including Dionisije and his chief deputy, Bishop Irinej Kovacevich (Irinej)—were originally named defendants in Firmilian's suit, but the captions of the pleadings did not designate them in their corporate

capacities. Moreover, all but Dionisije were dismissed from the action at an early stage.

In the course of the Illinois litigation Dionisije identified three parcels of real property as diocesan property subject to the court's disposition. One of these parcels was the Jackson property. As of 1962 (before the Illinois litigation began), title to this property was held by St. Sava.

The Illinois trial court granted summary judgment to Dionisije. The Appellate Court of Illinois reversed and remanded for trial (*Serbian Eastern Orthodox Diocese v. Ocokoljich* (1966) 72 Ill.App.2d 444 [219 N.E.2d 343]). On remand, the trial court held in 1973 that Dionisije's defrockment and removal from office were legal and that all diocesan properties were held in trust for the members of the Diocese. Dionisije appealed the trial court's finding as to his defrockment and removal, but not its finding as to the manner in which title to diocesan property was held. The Illinois Supreme Court reversed, concluding the proceedings against Dionisije were illegal under church law (*Serbian Eastern Orth. Diocese, etc. v. Milivojevich* (1975) 60 Ill.2d 477 [328 N.E.2d 268]). The United States Supreme Court granted certiorari. ((1975) 423 U.S. 911 [46 L.Ed.2d 139, 96 S.Ct. 213].)

Before the United States Supreme Court, Dionisije stated: "This litigation concerns the control of extensive property interests of the American-Canadian Diocese of the Serbian Orthodox Church." He specifically named the Jackson property as one of "three large religious-cultural centers" owned by the Diocese and alleged that he and his followers had "been in control and possession of the property since its acquisition."

The United States Supreme Court reversed the Illinois Supreme Court on the ground it had contravened the First and Fourteenth Amendments by improperly inquiring into matters of ecclesiastical cognizance and polity and impermissibly interfering with decisions of the highest authority of a hierarchical church. (*Serbian Orthodox Diocese v. Milivojevich, supra,* 426 U.S. 696.) Notwithstanding that the resolution of the dispute determined the control of church property, the Court held that the dispute was religious in nature and that the civil courts must defer to the Holy Assembly's decision. (*Ibid.*)

On remand, the Illinois trial court in 1978 entered a "Final Judgment" in accordance with the holding of the United States Supreme Court. As pertinent here, the court found and ordered:

(1) The real property in California to which St. Sava held title was impressed with a trust in favor of the Diocese;

(2) St. Sava is a secular arm of the Diocese;

(3) Pending reorganization of the old Diocese into three new dioceses, Bishop Firmilian was entitled to hold in trust and administer the diocesan properties, including the property held by St. Sava;

(4) Dionisije and all persons and corporations acting with him or under his direction were ordered to turn over control and management of all diocesan property to Firmilian.

Dionisije appealed to the Illinois Supreme Court. Here, he contended that the trial court exceeded its jurisdiction by requiring St. Sava to turn over its assets to the plaintiffs even though it had not been served with process, named as a party, or appeared in the suit. In addition, he contended for the first time that the Jackson property was not actually diocesan property but was controlled individually by the members of St. Sava. The court rejected these arguments and affirmed the final judgment. (*Serbian Eastern Orthodox Diocese* v. *Milivojevich* (1979) 74 Ill.2d 574 [25 Ill. Dec. 629, 387 N.E.2d 285].)

As to Dionisije's contention that the final judgment improperly required St. Sava to turn over its assets to the plaintiffs, the court noted: "The ordering portion of the [final judgment] does not in terms direct . . . the California . . . corporation to turn over assets to the [Diocese]. [¶] . . . The [Diocese's] second amended and supplemental complaint does not seek relief against the foreign corporations, and we do not consider that the ordering portion of the judgment is intended to require action on their part." (*Serbian Eastern Orthodox Diocese* v. *Milivojevich, supra*, 387 N.E.2d at p. 288.)

As to the contention that the Jackson property did not belong to the Diocese, the court replied: "So far as the findings of the court are concerned, they are not inappropriate. This case was tried and decided on the proposition that the property at stake was held in trust for the members of the Diocese subject to the control of its bishop under the provisions of the constitutions of the Serbian Orthodox Church and of the Diocese. The defendants' answer to the complaint did not assert by way of an alternative defense that the disposition of the property to which the [corporation holds] title was not subject to the directives of whoever was the legitimate bishop of the Diocese. The earlier judgment entered after trial contained the same findings as those in the judgment on remand respecting property held by the foreign [corporation]. The defendants' post-trial motion to reconsider did not challenge them. The plaintiffs state that no such challenge was made on

appeal, and the defendants do not contend to the contrary. [¶] The validity of Dionisije's suspension and removal and the validity of Firmilian's appointment as administrator having been conclusively adjudicated, any claim based on Dionisije's former status as bishop was perforce extinguished. [Citation.] For the same reason we cannot now entertain the defendants' contention that the property held by the foreign [corporation] is, under [its] constitution and bylaws, controlled individually by [its] members." (*Id.* at pp. 288-289.)

## 2. *The California Litigation*

In 1980, St. Sava filed a complaint in Amador County Superior Court to quiet title to real property, for slander of title, for declaratory relief, and for injunctive relief. The named defendants included the Diocese and Bishop Firmilian.

The first cause of action alleged generally that defendants wrongly claimed to hold an interest in the Jackson property, which was in fact owned solely by plaintiff.

After obtaining a change of venue to Sacramento County, the Diocese filed a cross-complaint for declaratory relief and to impose constructive trust, in which it sought recognition and enforcement of the Illinois final judgment as res judicata.

Both parties filed motions for summary judgment. The Diocese's motion asked the court to determine that St. Sava's claim was barred by the full faith and credit clause of article IV, section I of the United States Constitution and by principles of res judicata and collateral estoppel, because the Illinois final judgment had conclusively determined that St. Sava was a secular arm of the Diocese, holding title to the Jackson property in trust for the members of the Diocese. As pertinent, St. Sava's cross-motion asked the court to determine that as a nonparty to the Illinois litigation over whom the Illinois courts could not exercise jurisdiction, St. Sava could not be bound by the Illinois final judgment under the full faith and credit clause.

In support of its claim of disputed issues of material fact St. Sava introduced evidence tending to show that Dionisije surrendered control over the operation of the Jackson property to the local directors of St. Sava on June 14, 1962, before commencing the Illinois litigation, and that St. Sava operated autonomously at all times thereafter. The Diocese produced evidence tending to show that Dionisije continued to control the Jackson property throughout the Illinois litigation.

The trial court granted the Diocese's motion for summary judgment and denied St. Sava's cross-motion. In its judgment the court found, "pursuant to the Full Faith and Credit Clause of the United States Constitution and the principles of res judicata and collateral estoppel," (1) it must accord full faith and credit to the Illinois final judgment, and (2) the final judgment conclusively adjudicated that the Diocese maintained beneficial ownership of the Jackson property at all times since its acquisition and that St. Sava was a secular arm of the Diocese holding title in trust for the benefit of the Diocese. The court ordered St. Sava to transfer either title to the Jackson property or full management and control thereof to the Diocese.

St. Sava's appeal followed.

In an unpublished portion of this opinion, we reject St. Sava's contention the Illinois courts did not conclusively adjudicate that the Jackson property was held in trust for the Diocese.[1] In this published portion, we explain why factual disputes as to the validity of the Illinois judgment preclude the conclusion the judgment is entitled to full faith and credit.

### DISCUSSION

#### I

*The Illinois Proceedings Conclusively Determined That St. Sava Holds Title to the Jackson Property in Trust for the Benefit of the Diocese. (See fn. 1.)*

. . . . . . . . . . . . . . . . . . . . . .

#### II

*Factual Disputes Respecting the Validity of the Illinois Judgment Preclude Entry of Summary Judgment.*

A. *The Illinois courts did not determine they had jurisdiction to adjudge that St. Sava's property was held in trust for the Diocese.*

St. Sava contends the California trial court erroneously gave the Illinois final judgment full faith and credit because the Illinois trial court was

---

[1] Pursuant to rule 976.1 of the California Rules of Court, all portions of this opinion shall be published except part I of the Discussion.

without jurisdiction to adjudicate St. Sava's interest in the Jackson property.

■ Article IV, section 1 of the federal Constitution provides in pertinent part that, "Full faith and credit shall be given in each state to the . . . judicial proceedings of every other State." This provision generally requires every state to give to a judgment at least the res judicata effect which the judgment would be accorded in the state which rendered it. (*Durfee* v. *Duke* (1963) 375 U.S. 106, 109 [11 L.Ed.2d 186, 190, 84 S.Ct. 242].)

However, "a state court judgment need not be given full faith and credit by other states as to parties or property not subject to the jurisdiction of the court that rendered it. [Citations.]" (*Western Union Co.* v. *Pennsylvania* (1961) 368 U.S. 71, 75 [7 L.Ed.2d 139, 142-143, 82 S.Ct. 199]; *Williams* v. *North Carolina* (1944) 325 U.S. 226, 229 [89 L.Ed. 1577, 1581, 65 S.Ct. 1092, 157 A.L.R. 1366]; *Gagnon Co., Inc.* v. *Nevada Desert Inn* (1955) 45 Cal.2d 448, 457 [289 P.2d 466]; *Donel, Inc.* v. *Badalian* (1978) 87 Cal.App.3d 327, 331 [150 Cal.Rptr. 855]; see *Barber* v. *Barber* (1958) 51 Cal.2d 244, 247 [331 P.2d 628].)

Where another state has fully and fairly litigated its jurisdiction, and has finally decided the question, a second state may not reexamine the question but must give the judgment of the first state full faith and credit. (*Durfee* v. *Duke, supra*, 375 U.S. at p. 111 [11 L.Ed.2d at p. 191]; *Craig* v. *Superior Court* (1975) 45 Cal.App.3d 675, 680 [119 Cal.Rptr. 692].) However, where the first state has not litigated and decided the question, " 'the jurisdiction of a court rendering a judgment is open to inquiry under proper averments, when questioned in the court of another state. The party against whom the judgment is rendered is not forced to go to the state of the rendition of the judgment for relief.' " (*Gagnon Co., Inc.* v. *Nevada Desert Inn, supra*, 45 Cal.2d at p. 457.) The burden of showing the invalidity of the judgment is upon the party attacking the judgment. (*Williams* v. *North Carolina, supra*, 325 U.S. at pp. 233-234 [89 L.Ed. at p. 1584].) In the absence of a violation of federal constitutional rights, the validity and effect of a judgment of a sister state are governed by the law of the state where the judgment was rendered. (*Aldrich* v. *Aldrich* (1964) 378 U.S. 540, 543 [12 L.Ed.2d 1020, 1023, 84 S.Ct. 1687]; *Martin* v. *Martin* (1970) 2 Cal.3d 752, 761, fn. 13 [87 Cal.Rptr. 526, 470 P.2d 662]; *Gagnon Co., Inc.* v. *Nevada Desert Inn, supra*, 45 Cal.2d at p. 453.)

The Diocese contends the issue of the Illinois trial court's jurisdiction to render its final judgment was decided in Illinois, so St. Sava cannot raise the issue here. However, a careful reading of the opinion of the Illinois Supreme

Court in *Serbian Eastern Orthodox Diocese* v. *Milivojevich, supra,* 387 N.E.2d 285, reveals the contention is not well taken. The Illinois Supreme Court confronted the issue of jurisdiction only with respect to the portion of the judgment ordering Dionisije (and those acting with him) to turn over control of diocesan property and assets. (*Id.* at p. 288.) The Illinois Supreme Court resolved the jurisdictional attack by concluding the ordering portion of the judgment required no action on the part of St. Sava. (*Ibid.*) With respect to the findings now in dispute—that St. Sava's property was held in trust for the Diocese—the court made no decision at all respecting jurisdiction. Rather, the court concluded Dionisije's assertion that the Jackson property was not diocesan property was made too late. (*Ibid.*) Therefore, we do not read the opinion of the Illinois Supreme Court as reflecting either a full litigation or a decision upon the question whether the Illinois courts had jurisdiction to determine that St. Sava's property was held in trust for the Diocese. It follows that St. Sava may attack the Illinois judgment in the courts of California.

B. *The Illinois courts had no jurisdiction over St. Sava because St. Sava was never served with summons or complaint and never appeared in the action.*

■ "It is now recognized that the term 'jurisdiction' does not have a single, fixed meaning, but has different meanings in different situations." (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 1, p. 366.) As used here, "jurisdiction" means the power of the Illinois courts to adjudicate the rights and interests of St. Sava. (See *id.* at p. 365.)

■ It is a rule of federal constitutional magnitude that, "A court of one state cannot directly affect or determine the title to land in another. [Citations.]" (*Rozan* v. *Rozan* (1957) 49 Cal.2d 322, 330 [317 P.2d 11]; *Fall* v. *Eastin* (1909) 215 U.S. 1, 11 [54 L Ed 65, 30 S.Ct. 3] [54 L.Ed. 65, 70]; Annot., Res Judicata or Collateral Estoppel Effect, In State Where Real Property is Located, Of Foreign Decree Dealing With Such Property (1970) 32 A.L.R.3d 1330.) However, St. Sava makes no contention the Illinois judgment violated this rule. We shall therefore assume for the sake of argument it did not. ■ We address St. Sava's assertions that the Illinois courts lacked jurisdiction over St. Sava's "person" and over its property in California.

As pertinent here, " 'Jurisdiction is acquired in one of two modes: first, as against the person of the defendant by the service of process; or, secondly, by a procedure against the property of the defendant within the [territorial] jurisdiction of the court.' " (*Pennoyer* v. *Neff* (1877) 95 U.S. 714, 724 [24

L.Ed. 565, 569], quoting from *Boswell v. Otis* (1850) 50 U.S. (9 How.) 336 (13 L.Ed. 164).)

The second kind of jurisdiction—over property located within a state—is called in rem jurisdiction. (See *Hanson v. Denckla* (1958) 357 U.S. 235, 246-247 [2 L.Ed.2d 1283, 1293-1294, 78 S.Ct. 1228].) The Diocese concedes the Illinois courts had no in rem jurisdiction over St. Sava's California real property.

Nor did the Illinois trial courts have personal or in personam jurisdiction over St. Sava.  ▮   "Even though a proper basis of personal jurisdiction is present . . . and notice is given in such manner as to satisfy the requirements of constitutional due process . . . , jurisdiction may still not be obtained. The state, by statute, may prescribe the manner in which notice shall be given, and compliance with the statutory procedure of notice (process) may be considered jurisdictional. If it is, no jurisdiction of the person is acquired by the court in the particular action without such compliance." (2 Witkin, Cal. Procedure, *op. cit. supra*, Jurisdiction, § 92, p. 459.) ▮ It has long been settled under Illinois law that unless a party voluntarily appears in an action, personal jurisdiction over the party, including a corporation, is obtained only by service of summons and complaint. (Ill. Rev. Stat. ch. 110, paras. 2-203, 2-204 (1983); *Janove v. Bacon* (1955) 6 Ill.2d 245 [128 N.E.2d 706, 708]; *Lakeview Trust & Sav. Bank v. Estrada* (1985) 134 Ill.App.3d 792 [480 N.E.2d 1312, 1323]; *J.C. Penney Co., Inc. v. West* (1983) 114 Ill.App.3d 644 [449 N.E.2d 188, 190]; *In re Adoption of Miller* (1982) 106 Ill.App.3d 1025 [436 N.E.2d 611, 614-615]; *Cox v. General Motors Corporation* (1971) 132 Ill.App.2d 209 [267 N.E.2d 513, 515]; *Isaacs v. Shoreland Hotel* (1963) 40 Ill.App. 2d 108 [188 N.E.2d 776, 777].) Since St. Sava was never served with summons and complaint and never appeared in the action, the Illinois courts had no personal jurisdiction over St. Sava.

The Diocese cites the following cases in support of its argument that the Illinois courts had jurisdiction to determine St. Sava held title in trust for the Diocese: *MacDonald v. Dexter* (1908) 234 Ill. 517 [85 N.E. 209]; *Rozan v. Rozan, supra,* 49 Cal.2d 322; *Mills v. Mills* (1956) 147 Cal.App.2d 107 [305 P.2d 61]; *Hicks v. Corbett* (1955) 130 Cal.App.2d 87 [278 P.2d 77]. These cases stand for the proposition that where the courts of one state have personal jurisdiction of the parties, the state may enter a decree determining the rights of the parties in real property located in another state, and the other state will give the decree full faith and credit if it does not directly affect title. (*MacDonald, supra,* 85 N.E. at p. 211; *Rozan, supra,* at p. 331; *Mills, supra,* at p. 116; *Hicks, supra,* at p. 90.) These cases do not aid the

Diocese because their rule is premised on the court's having personal jurisdiction over the parties whose rights are determined. (*Taylor* v. *Taylor* (1923) 192 Cal. 71, 76 [218 P. 756 [51 A.L.R. 1074]; *Thatcher* v. *City Terrace etc. Center* (1960) 181 Cal.App.2d 433, 442 [5 Cal.Rptr. 396]; *Launer* v. *Griffen* (1943) 60 Cal.App.2d 659, 666-667 [141 P.2d 236].) Here, as we have seen, the Illinois courts had no personal jurisdiction over St. Sava.

The Diocese also cites *Sadacca* v. *Monhart* (1984) 128 Ill.App.3d 250 [83 Ill. Dec. 463, 470 N.E.2d 589], for the rule: " 'It is axiomatic that where equity has assumed and has jurisdiction for the purpose of granting equitable relief the court may determine all the issues of the case, whether legal or equitable.' [Citation.] A court acting in equity should enter a decree adjudicating all matters in controversy so as to avoid multiple litigation and to do full and complete justice. [Citation.]" (*Id*. at p. 595.) However, that rule is applicable only where a court of equity otherwise has jurisdiction. (*McLeod* v. *Lambdin* (1961) 22 Ill.2d 232 [174 N.E.2d 869, 872].) Thus, in *Sadacca*, the parties whose rights having adjudicated were before the court. (*Sadacca, supra,* 470 N.E.2d at pp. 589-591.) *Sadacca*'s rule of judicial efficiency does not excuse a fundamental lack of personal or in rem jurisdiction.

The Diocese argues, "As the United States Supreme Court recognized, control of the diocesan centers was inextricably linked to the identity of the Bishop and the restructuring of the Diocese." To the extent this assertion suggests the United States Supreme Court ruled that the Illinois state courts had jurisdiction to determine whether the property held by St. Sava was diocesan property, the argument is not well taken. The Supreme Court said, "Resolution of the religious disputes at issue here affects the control of church property in addition to the structure and administration of the . . . Diocese. This is because the Diocesan Bishop controls *respondent* Monastery of St. Sava and is the principal officer of *respondent* property holding corporations. Resolution of the religious dispute over Dionisije's defrockment therefore determines control of the property." (*Serbian Orthodox Diocese* v. *Milivojevich, supra*, 426 U.S. at p. 709 [49 L.Ed.2d at pp. 162-163], italics added.) The "respondent" Monastery and corporations were those organized under Illinois law and made parties to the litigation. (*Id*. 426 U.S. at p. 702 [49 L.Ed.2d at p. 158].) Because St. Sava was not made a party and had asserted no jurisdictional claim, the United States Supreme Court had no occasion to (and did not) address the issue. Nothing in *Serbian Orthodox Diocese* suggests the Illinois state courts had some basis for asserting jurisdiction over St. Sava other than in personam jurisdiction which ordinarily requires that a party be joined in an action by service of

process.[3] (See *Martin* v. *Wilks* (1989) 490 U.S. 755, 761 [104 L.Ed.2d 835, 844, 109 S.Ct. 2180], and authorities cited.)

The Diocese also asserts conclusionally that, "Any attempt to sever the 'property' issues from the more basic 'religious' issues would have violated the First Amendment." We understand this argument to suggest that the First Amendment somehow gave the Illinois courts jurisdiction to adjudicate St. Sava's rights in the Jackson property to which it held title. However, *Jones* v. *Wolf* (1979) 443 U.S. 595 [61 L.Ed.2d 775, 99 S.Ct. 3020] compels rejection of the Diocese's argument. ■ "The conclusion to be drawn from *Jones* v. *Wolfe, supra*, 443 U.S. 595, is that a state, if it so desires, may resolve disputes over church property through use of neutral principles of law without violating the First and Fourteenth Amendments. It need not adopt a rule of compulsory deference to religious authority in resolving church property disputes, even when issues of doctrinal controversy are not involved. The sources to be used to settle such disputes are the deeds to church property, the articles of incorporation of the local church, the state statutes, and the rules of the general church organization." (*Protestant Episcopal Church* v. *Barker* (1981) 115 Cal.App.3d 599, 614 [115 Cal.App.3d 599, 171 Cal.Rptr. 541].) In determining issues of ownership and control of church property, California applies the "neutral principles" approach approved in *Jones* v. *Wolf, supra.* (*Ibid.*; *Presbytery of Riverside* v. *Community Church of Palm Springs* (1979) 89 Cal.App.3d 910, 920 [152 Cal.Rptr. 854].)

At this juncture of the litigation, on the record before us, we do not see why St. Sava's claims cannot be adjudicated upon "neutral principles of law." Clearly the prolonged Illinois litigation resulted in appropriate deference to the Serbian church's decision that Firmilian, not Dionisije, was entitled to control diocesan properties. But the Diocese has not suggested why the issue tendered by St. Sava—whether its property is, in fact, a diocesan property—would necessarily require the courts to adjudicate ecclesiastical matters. The First Amendment does not require the states to adopt a rule of compulsory deference to religious authority in resolving church property disputes where no issue of doctrinal controversy is involved. (*Jones* v. *Wolf, supra*, 443 U.S. at p. 605 [61 L.Ed.2d at p. 786].) Indeed, the present dispute closely resembles the disputes over ownership of church property resulting from "schisms" that were adjudicated in *Jones* v. *Wolf, supra*, 443 U.S. 595, *Protestant Episcopal Church* v. *Barker, supra*,

---

[3] For this reason, we also reject the Diocese's assertion, unsupported by authority, that the Illinois courts had "plenary jurisdiction" to resolve in a single action both the religious dispute and the issue of the ownership of St. Sava's property, even in the absence of service of process on St. Sava.

115 Cal.App.3d 599, and *Presbytery of Riverside* v. *Community Church of Palm Springs, supra*, 89 Cal.App.3d 910.

■ Contrary to the Diocese's argument, the record before us does not show the adjudication of St. Sava's rights in its property by the courts of Illinois was compelled by the First Amendment. Nor does the record show the First Amendment would be violated by an adjudication in California.

We are left with the unassailable conclusion the Illinois state courts determined St. Sava held its real property in trust for the Diocese even though those courts had no in rem jurisdiction over the property and no personal jurisdiction over St. Sava. The next question is: what is the effect of this jurisdictional lacuna on the Illinois judgment? The answer is found in Illinois law requiring that an indispensable party be joined in an action.

C. *The record reflects triable issues of fact with respect to whether the Illinois judgment is void as to St. Sava because St. Sava may have been an indispensable party.*

Under Illinois law, as a general rule, "all persons must be made parties to the suit who are legally or beneficially interested in the subject matter of the litigation, and who will be affected by the judgment, so that the court may dispose of the entire controversy. [Citations.]" (*Feen* v. *Ray* (1985) 109 Ill.2d 339 [487 N.E.2d 619, 620].) Parties who must be joined are referred to as "necessary" or "indispensable" without distinction between the two labels. (See, e.g., *id*. at p. 621; *Lain* v. *John Hancock Mut. Life Ins. Co.* (1980) 79 Ill.App.3d 264 [398 N.E.2d 278, 283].)

■ In part, Illinois' indispensable party rule is grounded in due process: "It is generally accepted that, under fundamental principles of due process, a court is without jurisdiction to enter an order or judgment which affects a right or interest of someone not before the court. [Citations.]" (*Feen* v. *Ray, supra*, 487 N.E.2d at p. 620.) "The indispensable-party rule reflects a long-standing policy against affecting the rights and interests of absent parties who do not have an opportunity to protect their interests. [Citation.]" (*Id*. at p. 621.) In part, the rule is premised on judicial efficiency: joinder of indispensable parties is necessary to allow the court to dispose of a controversy in a single lawsuit. (*Id*. at p. 622.)

"A person is a necessary and indispensable party to the litigation when the person has an interest in the subject matter of the suit which may be materially affected by a judgment entered in the person's absence. [Citations.] The relevant inquiry is . . . whether the absent person might claim a

substantial and present interest which determines that the person is a necessary and indispensable party. [Citations.]" (*People* ex rel. *Sheppard* v. *Money* (1988) 24 Ill.2d 265 [529 N.E.2d 542, 549-550]; see also *Bergstrand* v. *Rock Island Bd. of Educ.* (1987) 161 Ill.App. 180 [514 N.E.2d 256, 257].)

Where a judgment affects real property, the holder of legal title is generally an indispensable party to the suit, even where title is held in trust for another. (*People's Bank & Trust Co. of Rockford* v. *Gregory* (1932) 347 Ill. 397 [179 N.E. 856]; *Just Pants* v. *Bank of Ravenswood* (1985) 136 Ill.App.3d 543 [483 N.E.2d 331, 334]; *Bovinett* v. *Rollberg* (1979) 73 Ill.App.3d 490 [392 N.E.2d 27]; *Tri-Mor Bowl, Inc.* v. *Brunswick Corp.* (1977) 51 Ill.App.3d 743 [366 N.E.2d 941, 944]; see *Lakeview Trust & Sav. Bank* v. *Estrada, supra*, 480 N.E.2d at p. 1327 [mortgagor].) ▪ Here, because the judgment determined that St. Sava held title in trust for the Diocese, there can be no question that St. Sava had a substantial and present interest in the controversy sufficient to make it an indispensable party.[4]

The Illinois indispensable party rule is subject to an exception which, according to the Diocese, applies here. "The general rule is that the interest of parties not before the court in a proceeding in equity will not be bound by the decree, but it is subject to the recognized exception that where a party, though not before the court in person, is so far represented by others that his interest receives actual and efficient protection, he will be bound by representation. The doctrine of representation applies, however, only where persons are before the court who have the same interests as those of persons . . . not before the court, and who will be equally certain to bring forward the merits of such interests and give them effective protection." (*Mortimore* v. *Bashore* (1925) 317 Ill. 535 [148 N.E. 316, 319]; see *Borrowman* v. *Howland* (1983) 119 Ill.App.3d 493 [457 N.E.2d 103, 107]; *Estate of Rosta* (1982) 111 Ill.App.3d 786 [444 N.E.2d 704, 707-708]; *Pioneer Processing, Inc.* v. *Illinois E.P.A.* (1982) 111 Ill.App.3d 414 [444 N.E.2d 211, 219], vacated on other grounds (1984) 102 Ill.2d 119 [464 N.E.2d 238]; *Klingel* v. *Kehrer* (1980) 81 Ill.App.3d 431 [401 N.E.2d 560, 567]; *Moore* v. *McDaniel* (1977) 48 Ill.App.3d 152 [362 N.E.2d 382, 388]; *Phillips Petroleum* v. *Shutts* (1985) 472 U.S. 797 [86 L.Ed.2d 628, 105 S.Ct. 2965]; *Montana* v. *United States* (1979) 440 U.S. 147; Rest.2d Judgments, §§ 41, 42.) An Illinois

---

[4] The Diocese argues that even though St. Sava held legal title to the subject property, it did so in trust and beneficial ownership of the property remained in the Illinois religious corporation from which St. Sava took title. This assertion goes to the heart of the dispute between the parties and essentially asks us to resolve many disputed facts discussed, *post*, with respect to the conditions upon which the property was conveyed to St. Sava. In any event, under Illinois law which we have cited, the holder of legal title must be joined as a party even where it is asserted title is held in trust.

judgment cannot bind an otherwise indispensable party where the party does not receive actual and efficient protection of the party's interests. (*Mortimore* v. *Bashore, supra*, 148 N.E. at p. 319; *Feen* v. *Ray, supra*, 487 N.E.2d at pp. 622-623; *Tri-Mor Bowl, Inc.* v. *Brunswick Corp., supra*, 366 N.E.2d at p. 944.)

Here, the Illinois proceedings on their face fail to show that St. Sava received actual and efficient representation of its interests from Dionisije. As we have recounted, Dionisije did not tender St. Sava's claim to ownership of the Jackson property independent of the Diocese until it was too late to allow the claim to be litigated. (See *Serbian Eastern Orthodox Diocese* v. *Milivojevich, supra*, 387 N.E.2d at pp. 288-289.) The tardy tender of the claim is consistent with Dionisije's interest in the litigation. His interest was in controlling the Diocese and its assets. Until his battle for control of the Diocesan empire had been lost, he had no interest in advancing a claim that would exclude the Jackson property from the assets of the Diocese.

The Diocese asserts St. Sava should nonetheless be bound by the judgment because St. Sava was a nonfunctional corporate "shell" and the Jackson property was controlled by the Western Region Board of the Diocese, because Dionisije made all appointments to St. Sava's board of directors, and because St. Sava consented to the position taken by Dionisije in the Illinois litigation.[5] In support of these positions, the Diocese adduced evidence in the trial court tending to show that between 1963 and 1975 St. Sava maintained no corporate records separate from those of the Western Region Board of the Diocese; that the Jackson property was listed as an asset of the Diocese in reports submitted to the Diocese; that plans for improvements to the Jackson property were submitted to the Diocese for approval; and that members of St. Sava's board of directors received briefings on the litigation from Dionisije's attorneys.

However, on the motion for summary judgment, St. Sava produced sufficient evidence to create triable issues of fact respecting its corporate

[5] In discussing the Illinois litigation in its briefs, the Diocese refers frequently to "the Dionisije Group" or "St. Sava's legal representatives." Thus, for example, the Diocese asserts "St. Sava's legal representatives were unequivocally of the view that the Jackson Property *was* a diocesan trust asset which was subject to final disposition in [the Illinois] proceedings. Indeed, St. Sava's representatives asserted that the right to control the diocesan centers in Illinois, Pennsylvania and California was the *key* issue for determination in the litigation." (Italics in original.) These characterizations overlook the fact that all individual defendants except Dionisije were dismissed from Firmilian's action on September 11, 1967. Thus, the portions of the record cited by the Diocese (in support of its claim that St. Sava's "representatives" asserted diocesian control of the Jackson property) all involve proceedings occurring many years after the dismissal of the individual defendants, when only Dionisije and the two Illinois corporations were still parties.

existence and its independence from Dionisije and the position taken by him in the litigation.[6]

Thus, according to the declarations of Robert Vujovich, Sr., Nick Chabraja, and Steven Maravich, members of the Executive Board of the Diocesan Council in 1962, Dionisije purchased the Jackson property in the name of the Diocese without first obtaining the Diocesan Council's permission, and at a price beyond what the Diocese could then afford. In doing so, he exceeded his authority, because the executive board was solely responsible for making temporal decisions about diocesan property. At a meeting of the executive board on June 14, 1962, attended by all three declarants, Dionisije was directed to convey the Jackson property to the laity who had formed the California corporation. This conveyance was for fair consideration, because St. Sava assumed all financial obligations in respect to the property. The Executive Board thereafter considered the property to be under the exclusive ownership and control of St. Sava, which paid for the property and all improvements; the board no longer identified the property as a diocesan asset or participated in its management.

According to the declaration of Sophia Ducich, who attended most meetings of the Western Region Board of Diocese between 1962 and 1974, the Western Region Board was abandoned by the Diocese and by both factions in the Illinois litigation after the 1963 schism. The fact that the name "Western Region Board" continued to be used in the minutes of meetings of the St. Sava board of directors is insignificant, as this name was merely a holdover from before the schism. The fact that the same people often sat on the Western Region Board and on St. Sava's board merely reflected the fact that the most trusted and capable Serbs in the West had been selected to serve on the two separate boards, according to the declaration of Irinej, the then president of St. Sava's board of directors. According to the declaration of Ned Vukovich, St. Sava maintained its own bank account separate from that of the Western Region Board, despite some confusion and "comingling [sic] of financial records and activities" resulting "from the attempt by

---

[6]On the motion for summary judgment, each party moved to strike evidence submitted in the opposing party's declarations. The trial court failed to rule on these motions. Where evidentiary objections were made but were not ruled on by the trial court, the reviewing court must decide whether the evidence objected to is admissible, unless the objection is waived by failure to renew it on appeal. (*Hayman* v. *Block* (1986) 176 Cal.App.3d 629, 640 [222 Cal.Rptr. 293].) St. Sava has not renewed its objections to the Diocese's evidence by pointing to any evidentiary errors below that may have prejudiced its position; therefore its objections are deemed waived on appeal. (*Ibid.*) The Diocese alludes to its evidentiary objections below, but fails to brief them on appeal with any specificity; accordingly these objections are also waived. We therefore presume the admissibility of all the evidence presented to the trial court in the parties' declarations.

certain individuals at expediency and from a lack of managerial sophistication." In support of this assertion, a copy of a bank account book bearing the name "St. Sava Mission" with entries covering the period April 1962 through June 1964 was attached as an exhibit. As further evidence of its financial independence and corporate activity during the period of the Illinois litigation, St. Sava cites to its financial statements for the years 1968, 1971, 1972, and 1973—exhibits originally offered by the Diocese—and points out that none of them bears the name of the Diocese or otherwise mentions it.

According to the declaration of Ned Vukovich, St. Sava's board of directors affirmed throughout the Illinois litigation that St. Sava was independent of both factions in the litigation and would not align with either. This claim is supported by the declaration of Leo Sullivan, lead counsel for Dionisije's faction from 1963 through 1981, which alleges that he did not represent the interests of St. Sava or the Jackson property at any time during the Illinois litigation, that ownership and control of the Jackson property were not litigated issues at trial, and that the Diocese never sought relief against St. Sava or the Jackson property until posttrial contempt proceedings.

The Diocese also contends the president of St. Sava's board of directors, Irinej, gave testimony in the Illinois proceedings that "confirmed" Dionisije's representations that the Jackson property was an asset of the Diocese. However, the cited testimony merely states the value of improvements made to the property and identifies income received by the property; the testimony does not identify the property as a diocesan asset.

The evidence recounted above is sufficient to create a triable issue of fact on the questions whether St. Sava had a viable corporate existence, whether Dionisije somehow controlled St. Sava, or whether St. Sava consented to the position taken by Dionisije in the Illinois litigation.[7] On a motion for summary judgment, " 'The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion.' " (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134], quoting *Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 436-439 [74 Cal.Rptr. 895, 450 P.2d 271].) The Diocese has not shown without factual dispute that Dionisije actually and efficiently represented St. Sava's interests in the Illinois litigation. (See *Mortimore* v. *Ba-*

---

[7] These triable issues of fact also preclude summary judgment on the theory, tendered by the Diocese, that a judgment against the owner of a closely held corporation is conclusive upon the corporation. (See Rest.2d Judgments, § 59, subd. (3).)

*shore, supra*, 148 N.E. at p. 319; *Feen* v. *Ray, supra*, 487 N.E.2d at pp. 622-623; *Tri-Mor Bowl, Inc.* v. *Brunswick Corp., supra*, 366 N.E.2d at p. 944.) In the instant case, the trial court's summary judgment may not be premised upon Dionisije's asserted representation of St. Sava because, "Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. [Citations.]" (*Mann* v. *Cracchiolo, supra*, 38 Cal.3d at p. 35; Code Civ. Proc., § 437c, subd. (c).)

Since the factually conflicting state of the evidence does not allow us to conclude St. Sava received actual and efficient representation, St. Sava remains an indispensable party to the Illinois litigation. ■ The next question is: Under the Illinois law, what consequences flow from the failure to include St. Sava as a party to the Illinois action?

The failure to join an indispensable party does not deprive the court of jurisdiction over the parties properly before it. (*In re J. W.* (1981) 87 Ill.2d 56 [429 N.E.2d 501, 503].) However, a judgment entered in the absence of an indispensable party is null and void as to the nonjoined party. (*People* v. *Kerner* (1966) 35 Ill.2d 33 [219 N.E.2d 617, 620]; *Lakeview Trust & Sav. Bank* v. *Estrada, supra*, 480 N.E.2d at p. 1326; *Sullivan* v. *Merchants Property Ins. Co., etc.* (1979) 68 Ill.App.3d 260 [385 N.E.2d 897, 899].) "A defendant or unnamed party who was never served and who never appeared in the proceedings but whose rights were directly adjudicated therein may attack the judgment either directly or collaterally as void for failure to obtain jurisdiction over his person. [Citations.]" (*In Interest of Vaught* (1981) 103 Ill.App.3d 802 [59 Ill.Dec. 474, 431 N.E.2d 1231, 1233]; see *City of Chicago* v. *Fair Employment Prac. Com'n* (1976) 65 Ill.2d 108 [357 N.E.2d 1154, 1155].)

In this case, the Illinois courts purported to adjudicate St. Sava's rights in real property to which it held title even though St. Sava was never named as a party or appeared in the action. On the motion for summary judgment, St. Sava raised a triable issue of fact with respect to whether the Illinois judgment was void as to St. Sava because St. Sava had not been named as an indispensable party. The trial court erroneously concluded the Illinois judgment was entitled to full faith and credit in California, since a judgment that is void under the law of a sister state (for failure to join an indispensable party) is not entitled to full faith and credit in California. (*Estate of Johnson* (1965) 233 Cal.App.2d 785, 791 [43 Cal.Rptr. 913]; see *Hanson* v. *Deckla, supra*, 357 U.S. at p. 255 [2 L.Ed.2d at pp. 1298-1299].)

D. *The record reflects triable issues of fact with respect to whether St. Sava was "in privity" with Dionisije.*

The Diocese contends St. Sava is properly bound by the Illinois judgment because, even though St. Sava was never a party to those proceedings, St. Sava was "in privity" with Dionisije, who was a party.

Under Illinois law, "[A]n issue which has been addressed by a court of competent jurisdiction cannot be relitigated in a later action between the same parties or their privies in the same or a different cause of action." (*Simcox* v. *Simcox* (1989) 131 Ill.2d 491 [546 N.E.2d 609, 611]; see *Nevada* v. *United States* (1983) 463 U.S. 110, 135 [77 L.Ed.2d 509, 103 S.Ct. 2906, [same].) " 'Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties . . . .' (Restatement of Judgments, § 83, comment a, at 389 (1942).) Stated differently, a non-party may be bound if his own interests are so closely aligned to a party's interests that the party is his virtual representative. [Citation.]" (*Johnson* v. *Nationwide Business Forms, Inc.* (1981) 103 Ill.App.3d 631 [431 N.E.2d 1096, 1098].)

The privity rule is commonly applied to bind those who succeed to an interest in property where rights in the property have been litigated to judgment by a predecessor in interest. (See, e.g., *Knodle* v. *Jeffrey* (1989) 189 Ill.App.3d 877 [545 N.E.2d 1017, 1024]; *Housing Auth. for La Salle* v. *YMCA of Ottawa* (1984) 101 Ill.2d 246 [461 N.E.2d 959]; Rest.2d Judgments, § 43.) The successor theory of privity is not at issue here, where St. Sava held title to the Jackson property before and during the Illinois litigation. We therefore have no occasion to discuss the policy concerns underlying the doctrine of privity where the doctrine is premised upon an interest obtained by succession.

The rule of privity may also be applied where a party to a lawsuit represents a nonparty who has a concurrent interest in property that is the subject of the lawsuit. Thus, for example, in *Furgatch* v. *Butler* (1988) 188 Ill.App.3d 1060 [545 N.E.2d 140] the court concluded an owner of real property was bound by an adjudication of property rights obtained by the lessor's lessee. (P. 143.)

This theory of representation is recognized by the Restatement Second of Judgments, which has abandoned the "privity" nomenclature altogether. (See Rest.2d Judgments, § 62, com.; *Montana* v. *United States, supra,* 440

U.S. at p. 154, fn. 5 [59 L.Ed.2d at p. 217].) Thus, section 41 of that Restatement, set out in the margin,[8] states rules establishing when a nonparty may be bound by a judgment upon the theory the nonparty's interest was represented by a party. Although couched in terms of "privity," the claim advanced by the Diocese is in effect, one premised on this theory of representation: that St. Sava was represented by Dionisije in the Illinois litigation and may be bound by the judgment as a consequence.

■■■ If a nonparty is to be bound by a judgment, upon the theory the nonparty's concurrently held interests were represented by a party, at a minimum it must be shown that the interest of the nonparty received adequate representation by the party. This is so for several reasons. First, it is a requirement of due process of law under the federal Constitution. (*Phillips Petroleum Co.* v. *Shutts, supra,* 472 U.S. at p. 812 [86 L.Ed.2d at p. 642]; *Hansberry* v. *Lee* (1940) 311 U.S. 32, 42-43 [85 L.Ed. 22, 27, 61 S.Ct. 115, 132 A.L.R. 741]; see Comment, *Nonparties and Preclusion by Judgment: The Privity Rule Reconsidered* (1968) 56 Cal.L.Rev. 1098, 1103.) Second, the Illinois Supreme Court has recognized privity may not be relied upon where the nonparty receives inadequate representation. (*Simcox* v. *Simcox, supra,* 546 N.E.2d at p. 611 [in marital dissolution action, children are not privies of their parents because the interests of the children are not properly represented].) Third, although no Illinois case has expressly so held, we think standards of representation must be the same for purposes of indispensable party analysis, on the one hand, and privity analysis, on the other. It would be anomalous to have an Illinois judgment declared void by indispensable party analysis but valid by privity analysis, or vice versa. Therefore, in the present context, the test of privity is the same as that for the exception to the Illinois indispensable party doctrine: did the nonparty receive actual and efficient representation by a party? (See, e.g., *Mortimore* v. *Bashore, supra,* 148 N.E. at p. 319; Rest.2d Judgments, § 42.)

---

[8] Restatement Second of Judgments section 41 provides:

"(1) A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is:

"(a) The trustee of an estate or interest of which the person is a beneficiary; or

"(b) Invested by the person with authority to represent him in an action; or

"(c) The executor, administrator, guardian, conservator, or similar fiduciary manager of an interest of which the person is a beneficiary; or

"(d) An official or agency invested by law with authority to represent the person's interests; or

"(e) The representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member.

"(2) A person represented by a party to an action is bound by the judgment even though the person himself does not have notice of the action, is not served with process, or is not subject to service of process.

"Exceptions to this general rule are stated in § 42."

■ We have previously discussed why triable issues of fact preclude summary judgment on the theory St. Sava's interests received adequate representation in the Illinois litigation. That discussion applies here and precludes summary judgment on the theory St. Sava was in privity with any party to the Illinois litigation.

E. *The record does not disclose undisputed facts sufficient to estop St. Sava from pursuing its action.*

The Diocese contends St. Sava is estopped to pursue this action upon principles set out in section 62 of the Restatement Second of Judgments, as follows:

"*Conduct Inducing Reliance on an Adjudication*

"A person not a party to an action who has a claim arising out of the transaction that was the subject of the action, and who knew about the action prior to the rendition of judgment therein, may not thereafter maintain an action on his claim against a party to the original action if:

"(1) The enforcement of the claim against that party would result in subjecting him to inconsistent obligations or in a determination of his rights and duties that is incompatible with the judgment in the original action; and

"(2) The claimant so conducted himself in relation to the original action that the party against whom the second action is brought:

"(a) Was reasonably induced to believe that the claimant would make no claim concerning the transaction or that the claimant would govern his conduct by the judgment in the original action; and

"(b) Justifiably abstained from employing procedures, such as joinder of the claimant or commencement of another action in which the claimant was made a party, that could have determined the claimant's claim."

The Diocese has cited no authority showing the courts of Illinois embrace this rule. Even assuming they do, the evidence cited by the Diocese is insufficient to support summary judgment on this theory.

The Diocese points to a notice of lis pendens filed in Amador County and giving St. Sava notice of the Illinois proceedings. However, the Diocese cites

no authority for the view that the mere filing of a lis pendens in another state was sufficient to confer jurisdiction upon the Illinois courts to adjudicate the rights of St. Sava. We need not discuss whether a lis pendens might serve to bind the successor to a party properly joined in an action. In the circumstances present here, the notice afforded by the lis pendens cannot constitutionally be a substitute for service of summons and complaint because, ". . . a party seeking a judgment binding on another cannot obligate that person to intervene; he must be joined. [Citation.]" (*Martin* v. *Wilks, supra*, 490 U.S. at p. 763 [104 L.Ed.2d at p. 845].) As we have explained, the law of Illinois prescribes joinder of a party by service of summons and complaint, not by the filing of a lis pendens.

The Diocese also asserts, "In the Illinois litigation, St. Sava's legal representatives judicially admitted that the Jackson Property was a trust asset of the Diocese and actively encouraged the Illinois courts to determine which faction of the Diocese was entitled to control this asset." However, as we have discussed (see fn. 5, *ante*), the only party to the Illinois litigation arguably qualifying as a "legal representative" of St. Sava and making these representations was Dionisije, and triable issues of fact preclude the conclusion he was authorized to speak for St. Sava.[9]

Finally, the estoppel theory set out in section 62 of the Restatement Second of Judgments is by its express terms premised upon "Conduct *Inducing Reliance* on an Adjudication." (Italics added.) The Diocese has failed to cite any evidence in the record showing the parties to the Illinois litigation failed to join St. Sava as a party because they were "reasonably induced to believe that the claimant would make no claim concerning the transaction or that the claimant would govern his conduct by the judgment in the original action; . . ." (Rest.2d Judgments, § 62, subd. (2)(a).) We will not on our own motion search the voluminous record for such evidence. In the absence of such evidence it is possible to speculate that the failure to join St. Sava as a party was not the result of any conduct on St. Sava's part but rather simply reflected tactical considerations not disclosed by the record before us.

The summary judgment cannot be upheld upon the principle of estoppel.

---

[9] We have also pointed out how Irinej's testimony did not identify the Jackson property as an asset of the Diocese.

## DISPOSITION

The judgment is reversed. Appellant shall recover costs on appeal.

Sparks, Acting P. J., and Scotland, J., concurred.

A petition for a rehearing was denied October 15, 1990, and respondents' petition for review by the Supreme Court was denied December 12, 1990.